# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

STATE OF CONNECTICUT,
     Plaintiff,

     v.

THE MCGRAW-HILL COS., INC., and
STANDARD & POOR'S FINANCIAL
SERVICES, LLC,
     Defendants.

No. 3:13-cv-311 (SRU)

## RULING ON PLAINTIFF'S MOTION FOR REMAND

On March 10, 2010, the State of Connecticut ("Connecticut" or "the plaintiff") filed this action in Connecticut Superior Court against The McGraw-Hill Companies, Inc. and Standard and Poor's Financial Services, LLC (the "defendants") alleging violations of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a, *et seq*. ("CUTPA").  *See* Compl. (doc. # 1-3).  Almost three years later, on March 6, 2013, the defendants removed the action to federal district court, asserting that the plaintiff's state-law claims necessarily raised substantial and disputed issues of federal law.  *See* Notice of Removal (doc. # 1).  Now pending is the plaintiff's motion to remand the case to state court (doc. # 26).  For the reasons that follow, the plaintiff's motion is GRANTED.

## I.    Background

Standard & Poor's Rating Services ("S&P"), a business unit of defendant Standard & Poor's Financial Services, LLC, is the largest credit rating agency on the globe, publishing widely-read, forward-looking opinions about the creditworthiness of various financial instruments and issuers of debt, including corporations and sovereign countries.  As a Nationally Recognized Statistical Rating Organization ("NRSRO") registered with the Securities and

Exchange Commission ("SEC"), S&P operates under the regulatory aegis of the Credit Rating

Agency Reform Act of 2006, 15 U.S.C. § 78o-7, *et seq.* ("CRARA").  The CRARA vests the

SEC with "exclusive authority" to promulgate rules governing NRSROs, and generally prohibits

state agencies from "seek[ing] to regulate the 'substance of credit ratings' or the 'procedures or

methodologies' by which NRSROs determine credit ratings."  *Anshutz Corp. v. Merrill Lynch &

Co. Inc.*, 785 F. Supp. 2d 799, 829 (N.D. Cal. 2011) (citation omitted).  The statute goes on to

provide, however, that "[n]othing in this subsection prohibits the securities commission (or any

agency or office performing like functions) of any State from investigating and bringing an

enforcement action with respect to fraud or deceit against any nationally recognized statistical

rating organization or person associated with a nationally recognized statistical rating

organization."  15 U.S.C. § 78o-7(o)(2).  Thus, despite its broad sweep, the CRARA explicitly

recognizes the authority of individual states to pursue state-law enforcement actions alleging

fraud or deceit.

In March 2010, as consumers began to emerge from the economic detritus left by the

2008 financial crisis, Connecticut filed suit against the defendants in Connecticut Superior Court,

alleging that S&P violated state law by making false statements regarding its objectivity and

independence in issuing ratings for certain financial instruments at the heart of the crisis:

namely, residential mortgage-backed securities and collateralized debt obligations.[1]  In the years

that followed, the defendants vigorously litigated the case in state court, arguing, *inter alia*, that

the CRARA and the free-speech provisions of the First Amendment precluded Connecticut's

---

[1] On April 9, 2010, the defendants first removed this action to federal district court on grounds of diversity, arguing, *inter alia*, that Connecticut's sovereign enforcement action qualified as a "mass action" under the Class Action Fairness Act.  On January 5, 2011, Judge Janet B. Arterton rejected that argument and remanded the case to Connecticut Superior Court pursuant to a written decision.  *See Connecticut v. Moody's Corp., et al.*, No. 3:10-cv-546 (JBA), 2011 WL 63905 (D. Conn. Jan. 5, 2011).

CUTPA claims from the outset.  Those arguments failed to persuade,[2] and as Connecticut's case gained traction, two other states brought nearly-identical actions against the defendants under their own states' unfair trade practices laws.  Specifically, Mississippi filed suit on May 10, 2011, and Illinois did the same on January 25, 2012.

Thereafter, on February 5, 2013, Arizona, Arkansas, Colorado, Delaware, Idaho, Iowa, Maine, Missouri, North Carolina, Pennsylvania, Tennessee, Washington, and the District of Columbia simultaneously filed separate suits against the defendants in their respective state courts alleging causes of action similar to those brought by Connecticut, Mississippi, and Illinois. South Carolina followed suit on February 13, 2013.  Based on this latest wave of state-court litigation—which the defendants claim was precipitated, at least in part, by the efforts of Connecticut's attorney general—the defendants removed this action to federal court on March 6, 2013, asserting for the very first time that the plaintiff's CUTPA claims raised substantial and disputed issues of federal law sufficient to confer federal subject-matter jurisdiction.  *See* Notice of Removal (doc. # 1).  The plaintiff's motion to remand (doc. # 26) soon followed.

---

[2] In denying the defendants' motion to strike the complaint, the Superior Court concluded that:

> The State is not challenging the substance of [S&P's] ratings. Instead, it claims that [S&P's] statements about its independence and objectivity and the policies and procedures it claims to follow to protect those qualities are demonstrably false. While the actual opinions rendered by [S&P] may enjoy First Amendment protection, that protection does not give the defendants license to misrepresent to consumers the manner in which they operate their business or arrive at their opinions.

*Connecticut v. Moody's Corp.*, No. X04HHDCV106008836S, 2012 WL 2149408, at *9 (Conn. Super. Ct. May 10, 2012).

## II.      Standard of Review

"[F]ederal courts are courts of limited jurisdiction and, as such, lack the power to disregard such limits as have been imposed by the Constitution or Congress." *Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 213 (2d Cir. 2013) (internal quotation omitted). "The federal removal statute allows a defendant to remove an action to the United States District Court in 'any civil action brought in a State court of which the district courts of the United States have original jurisdiction.'" *Bounds v. Pine Belt Mental Health Care Res.*, 593 F.3d 209, 215 (2d Cir. 2010) (quoting 28 U.S.C. § 1441(a)). The party seeking removal bears the burden of establishing federal jurisdiction. *United Food & Commercial Workers Union v. CenterMark Props. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994). "However, '[i]n light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability.'" *Purdue Pharma L.P.*, 704 F.3d at 213 (quoting *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 274 (2d Cir. 1994)).

The defendants removed this action based solely on federal-question jurisdiction. *See* Notice of Removal (doc. # 1). Federal-question jurisdiction permits district courts to hear suits "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. In assessing federal-question jurisdiction, courts are guided by the well-pleaded complaint rule, which provides that "'federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.'" *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 12 (2003) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)); *see also Marcus v. AT&T Corp.*, 138 F.3d 46, 52 (2d Cir. 1998) ("[F]ederal question jurisdiction exists only when the plaintiff's own cause of action is based on federal law . . . and only when plaintiff's well-

pleaded complaint raises issues of federal law.") (internal citations omitted).  Although a plaintiff

"may not defeat federal subject-matter jurisdiction by 'artfully pleading' his complaint as if it

arises under state law where the plaintiff's suit is, in essence, based on federal law," the

existence of a federal defense, by itself, is insufficient to support removal.  *Sullivan v. Am.

Airlines, Inc.*, 424 F.3d 267, 271 (2d Cir. 2005).

**III.    Discussion**

Connecticut moves to remand this case to state superior court, arguing that (1) the notice

of removal is untimely; and (2) even if timely, the defendants' notice otherwise fails to meet the

requirements for establishing federal-question jurisdiction under *Grable & Sons Metal Prods.

Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 313 (2005).[3]  Because I agree that this action was

removed well outside the time limits imposed by 28 U.S.C. § 1446(b), I need not address

whether the *Grable* factors are satisfied here.

A.    Timeliness of Removal

As a general rule, a case originally filed in state court may only be removed within thirty

days after the defendant receives a copy of the initial pleading setting forth the claim for relief.

*See* 28 U.S.C. § 1446(b)(1).  "While this pleading triggering removal is often the plaintiff's

complaint, other papers which describe 'what the suit is about' can qualify."  *Pantalone v.

Aurora Pump Co.*, 576 F. Supp. 2d 325, 332 (D. Conn. 2008) (quoting *Murphy Bros., Inc. v.

Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 352 (1999)).  Specifically, the removal statute

provides:

---

[3] Although the plaintiff dedicates a substantial portion of its brief to arguments concerning the doctrine of "complete preemption," *see* Mem. of Law in Support of Mot. Seeking Emergency Relief of Remand to State Court and for Costs and Fees at 15-18 (doc. # 27), the defendants concede that the doctrine does not apply here.  *See* Defs.' Mem. in Opp'n to Pl.'s Mot. for Remand at 5 n.5 (doc. # 32).

> [I]f the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

28 U.S.C. § 1446(b)(3).[4]  To avail itself of the delayed-removal provision, however, the "defendant must 'apply a reasonable amount of intelligence in ascertaining removability.'" *Pantalone*, 576 F. Supp. 2d at 332 (quoting *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 205-06 (2d Cir. 2001)).

Here, there is no dispute that the defendants filed the notice of removal well outside the thirty-day period following service of the complaint.  Nor is there any dispute that the plaintiff's allegations remain unchanged from March 2010, and that no amended pleading, motion, or order otherwise provides a basis for removal.  Instead, the defendants argue that the February 5, 2013 filing of thirteen separate—albeit substantively similar—sovereign enforcement actions by different states, under different consumer-protection statutes, in different jurisdictions qualified as "other paper" triggering a renewed thirty-day period for removal under section 1446(b).  On that basis, the defendants submit that the removal of this case on March 6, 2013 was both timely and proper.

I disagree.

The majority of courts to consider the issue—both within this Circuit and without—have held that, for section 1446(b) purposes, the term "other paper" refers solely to documents generated in or arising out of the state-court action that is the subject of the defendant's removal petition.  *See, e.g.*, *Gruner v. Blakeman*, 517 F. Supp. 357, 361 (D. Conn. 1981) ("[T]he case law

---

[4] Removal of cases on the basis of diversity jurisdiction may not be accomplished more than one year after the case was initiated, even if diversity jurisdiction first arises at that time. *See* 28 U.S.C. 1446(c)(1).  That limitation does not apply in this case.

makes it clear that the reference to orders or other papers in Section 1446(b) 'relates only to papers filed in the action itself which alter or clarify the stated claim so as to reveal for the first time that a federal cause of action is stated.'") (quoting *Avco Corp. v. Local 1010 of the Int'l Union*, 287 F. Supp. 132, 133 (D. Conn. 1968)); *Arseneault v. Congoleum*, No. 01-cv-10657, 2002 WL 472256, at *4 (S.D.N.Y. Mar. 26, 2002) ("[C]ourts—or at least many courts—have generally required that notice be ascertainable from the record or papers produced in the action itself.") (internal quotation omitted); *Disher v. Citigroup Global Markets, Inc.*, 486 F. Supp. 2d 790, 802 n.5 (S.D. Ill. 2007) ("[A] document generated in a case separate from a case as to which removal is sought generally is not an 'order or other paper' authorizing removal within the meaning of 28 U.S.C. § 1446(b)."); *Hawaii v. Abbott Labs., Inc.*, 469 F. Supp. 2d 842, 848-49 (D. Haw. 2006) (holding that the unsealing of a federal qui tam action involving the same defendant was not an 'order or other paper" within the meaning of section 1446(b)); *Morsani v. Major League Baseball*, 79 F. Supp. 2d 1331, 1333 (M.D. Fl. 1999) ("[C]ourts interpret Section 1446(b) to refer only to 'an amended pleading, motion, order or other paper' that arises within the case for which removal is sought."); *Coman v. Int'l Playtex, Inc.*, 713 F. Supp. 1324, 1327 n.6 (N.D. Cal. 1989) ("In earlier cases considering what constitutes a 'paper' for purposes of triggering removal jurisdiction, nearly all courts have required that the 'other paper' be generated within the case."); *see also* 14C CHARLES A. WRIGHT, ET AL., FEDERAL PRACTICE & PROCEDURE § 3731 (4th ed. 2009) ("[D]ocuments not generated within the state litigation generally are not recognized as 'other papers,' receipt of which can start a 30-day removal period under Section 1446(b).").

I find these authorities persuasive.  Although the "other papers" referenced in section 1446(b) need not be formally "filed" in the state litigation, *see Vermande v. Hyundai Motor*

*America, Inc.*, 352 F. Supp. 2d 195, 199-202 (D. Conn. 2004) ("[M]ost courts have held—and

this Court agrees—that § 1446(b) is not limited to papers filed in the litigation and that the

reference to 'other paper' in the statute can include pre-removal correspondence between the

parties, including, as here, settlement offers."), or communicated to the defendant in any specific

manner,[5] *see Collins v. Landau*, No. 3:10-cv-588 (JBA), 2010 WL 5069907, at *2-3 (D. Conn.

Dec. 3, 2010) (holding that plaintiff's failure to respond to requests for admission qualified as an

"other paper" under section 1446(b)), the papers must, at the very least, consist of records or

documents produced in or emanating from the state-court action itself.[6]  Absent some

---

[5] In their brief, the defendants assert that the "Second Circuit has held that even oral statements may qualify as 'other paper.'"  Defs.' Mem. in Opp'n to Pl.'s Mot. to Remand at 28-29 (doc. # 32).  In support, the defendants cite the Second Circuit's decision in *Yong Qin Luo v. Mikel*, 625 F.3d 772 (2d Cir. 2010)*,* and Judge Arterton's decision in *Homer v. GMAC Mortg., LLC*, No. 3:10-cv-1937 (JBA), 2011 WL 3859719 (D. Conn. Aug. 31, 2011).  Neither case, however, stands for the proposition that oral assertions constitute "other paper" under section 1446(b).  Rather, both cases address the entirely separate question whether oral statements may be used to meet the removing-party's burden of demonstrating that the requirements of 28 U.S.C. § 1332—specifically, the amount-in-controversy requirement—are satisfied.  *Mikel*, for instance, does not even mention section 1446(b), *see Mikel*, 625 F.3d at 772-79, and although *Homer* briefly references section 1446(b), it does so only to explain why the plaintiff's reliance on that provision was misplaced, *see Homer*, 2011 WL 3859719, at *3.  Indeed, contrary to the defendants' representations here, the Second Circuit has never, to my knowledge, held that oral, out-of-court statements qualify as "other paper," and district courts within this Circuit have expressly rejected the proposition that any such oral communications retrigger the thirty-day removal period under section 1446(b).  *See, e.g.*, *Callen v. Callen*, 827 F. Supp. 2d 214, 216 (S.D.N.Y. 2011) ("[A]n oral assertion is insufficient to start the 30-day clock for a defendant's removal petition . . . .  Rather, the clock begins to run when an amended pleading, motion, order or other paper discloses facts giving rise to removability.") (internal quotations and citations omitted); *Johnson v. Davidson Bros., Inc.*, No. 11-cv-2816 (TPG), 2011 WL 6014457, at *2 (S.D.N.Y. Dec. 1, 2011) ("[A]n oral conversation is neither a 'pleading' nor 'other paper' capable of triggering the thirty-day filing period set forth in 28 U.S.C § 1446(b).").

[6] The defendants cite a number of recent cases to argue that modern courts take a more expansive view of "other papers" under section 1446(b).  *See* Defs.' Mem. in Opp'n to Pl.'s Mot. to Remand at 29-30 (doc. # 32).  To the extent those cases even support that proposition, they are distinguishable, and the defendants' reliance upon them is misplaced.  The overwhelming majority of cases cited by the defendants involved removals premised not on federal-question jurisdiction, but *diversity* jurisdiction.  *See Yarnevic v. Brink's, Inc.*, 102 F.3d 753, 755 (4th Cir.

extraordinary circumstance, documents filed or produced in other cases in other jurisdictions do not suffice.

In my view, this interpretation better comports with principles of statutory construction. The removal statute provides a list of documents that will trigger the delayed-removal provision under section 1446(b).  That list begins with specific items, such as amended pleadings, motions and orders, and ends with a residual category, "other paper."  *See* 28 U.S.C. § 1446(b)(3). Generally speaking, "when a statute sets out a series of specific items ending with a general term, that general term is confined to covering subjects comparable to the specifics it follows."  *Hall Street Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 586 (2008).  Here, the generalized term

---

1996) (concluding that an extrinsic memorandum that was not made part of the state-court record nonetheless qualified as an "other paper" from which it could be ascertained that the case had become removable on the basis of diversity); *Vermande v. Hyundai Motor America, Inc.*, 352 F. Supp. 2d 195, 199-202 (D. Conn. 2004) (considering a post-complaint settlement offer to determine the amount in controversy for purposes of diversity jurisdiction); *Collins v. Landau*, No. 3:10-cv-588 (JBA), 2010 WL 5069907, at *2-3 (D. Conn. Dec. 3, 2010) (holding that plaintiff's failure to respond to requests for admission qualified as an "other paper" establishing the requisite amount in controversy for diversity purposes); *iGames Entertainment, Inc. v. Regan*, No. Civ.A.04-cv-4179, 2004 WL 2538285, at *3-4 (E.D. Pa. Nov. 9, 2004) (considering as "other papers" filings in a collateral proceeding between the same parties that put the defendants on notice that the case involved the requisite amount in controversy for diversity purposes).  The only other cited case involved removal based on 28 U.S.C. § 1334 following the filing of a Chapter 11 bankruptcy petition.  *See Trs. of Masonic Hall & Asylum Fund v. Pricewaterhousecoopers LLP*, Nos. 08-cv-10495 (GEL), 08-cv-10494 (GEL), 2009 WL 290543, at *6-8 (S.D.N.Y. Feb. 6, 2009).

None of these cases, however, sheds much light on the question presented here: namely, whether the filing of a separate action, by a separate plaintiff, in a separate jurisdiction qualifies as an "other paper" that could render a previously-unremovable case removable on the basis of *federal-question* jurisdiction.  And for section 1446(b) purposes, the procedural context matters. In the diversity context, for example, extrinsic documents and developments are far more likely to affect matters bearing directly on the existence of federal subject-matter jurisdiction, such as the citizenship of the parties, amounts in controversy, and real parties in interest.  Thus, in diversity cases, there is arguably some justification for giving "other papers" a more capacious construction.  In the federal-question context, however, extrinsic papers will rarely, if ever, affect the court's subject-matter jurisdiction, because the jurisdictional inquiry generally focuses on just one paper: the plaintiff's well-pleaded complaint.  For this reason, the defendants' reliance on non-federal-question cases to argue for a more expansive interpretation of the term "other paper" in the context of this case is unavailing.

"other paper" appears to be limited by the three specific terms that precede it, all of which "implicitly refer only to documents generated in the same proceeding." *Hannah v. Schindler Elevator Corp.*, No. 3:09-cv-353 (RJC), 2010 WL 143757, at \*4 (W.D.N.C. Jan. 8, 2010).  Thus, the inclusion of the term "other paper" with "amended pleading," "motion," and "order" implies that the term refers to internal events specific to the action itself, not external occurrences such as the filing of a separate case in a separate court.  *See id.*

Applying these principles to the case at bar, I conclude that the February 5, 2013 filing of thirteen separate sovereign-enforcement actions against the defendants by different states in distant forums does not qualify as "other paper" sufficient to trigger the delayed-removal provision under section 1446(b).  Because the defendants improperly removed this action years after the statutory deadline had passed, the case must be remanded to state superior court.

Moreover, even assuming, for argument's sake, that the filing of a separate state-court action *does* in fact qualify as "other paper," thereby resetting the clock on the thirty-day removal period under section 1446(b), and assuming further that the defendants are correct that the existence of simultaneous state-court actions alleging fraud somehow conflicts with the CRARA's regulatory regime or otherwise implicates a substantial federal interest under *Grable*, the defendants were no doubt aware of those purported federal issues by, at the very latest, January 2012—the date by which both Mississippi and Illinois filed state-court actions nearly identical to the one at bar.[7]  To the extent this case is removable now, it was removable when

---

[7] It is worth emphasizing that the delayed-removal provision under section 1446(b) applies only "*if* the case stated by the initial pleading is not removable . . . ."  28 U.S.C. § 1446(b)(3) (emphasis added).  In other words, the "other paper" exception contains a condition precedent: the case first must be unremovable based on the initial pleading before the exception comes into play.  Here, the defendants admit that "federal issues have been in the case since the beginning" of the state-court litigation.  *See* Defs.' Mem. in Opp'n to Pl.'s Mot. for Remand at 4 (doc. # 32).  Yet, they still seek to avail themselves of the "other paper" exception, arguing that,

those other state actions were filed, and the defendants' inordinate delay in filing a notice of

removal on that basis—a period spanning more than a year—precludes removal at this stage.

Indeed, the defendants do not dispute that they previously raised in state court substantially the

same CRARA- and First Amendment-related issues upon which their belated removal petition

now relies.  *See* Defs.' Mem. in Opp'n to Pl.'s Mot. for Remand at 17-18, 26 (doc. # 32).  For

this reason, too, the removal of this action to federal court is clearly untimely, and remand is

required.

Although it may be "tempting to find federal jurisdiction every time a multi-billion dollar

case with national implications arrives at the doorstep," *Greenwich Fin. Servs. Distressed Mortg.*

*v. Countrywide Fin. Corp.*, 654 F. Supp. 2d 192, 204 (S.D.N.Y. 2009), succumbing to that

temptation is barred by the careful limits Congress has placed on the jurisdictional reach of

federal courts.  With few exceptions, the doors to federal court do not swing open merely

because a defendant has a national presence or is alleged to have committed wrongdoing that is

national in scope.  For all of these reasons, this case will be returned to state court, where it

belongs.

B.     Attorneys' Fees and Costs

The plaintiff also seeks an award of attorneys' fees and costs incurred as a result of the

removal of this action.  Section 1447(c) provides that "[a]n order remanding the case may require

---

despite the presence of federal issues in the initial pleading, Connecticut's action was
unremovable at the outset, but then became removable later, once a critical number of other
states (i.e., more than three) filed substantially-similar enforcement actions—actions that,
according to the defendants, were themselves removable based on the very same federal issues
that Connecticut's complaint raised from the start.  Although I need not decide the issue today, I
do note that I find the defendants' argument perplexing, to say the least.  Insofar as *multiple*
state-court enforcement actions present conflicts with CRARA's regulatory purpose sufficient to
confer federal-question jurisdiction, *one* state-court enforcement action presents those conflicts
as well, and the defendants provide no principled reason why removal is triggered in the former
scenario, but not the latter.

payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). Generally speaking, "courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). "District courts have considerable discretion and flexibility to fashion awards of costs and fees to deter removals sought for an improper purpose." *de la Rosa ex rel. de la Rosa v. 610-620 West 141 LLC*, No. 08-cv-8080 (PKL), 2009 WL 1809467, at *4 (S.D.N.Y. June 24, 2009) (citing *Martin*, 546 U.S. at 140).

Here, the defendants removed this action long after the statutory deadline had passed, and did so based on a legal premise that, even if valid, was readily apparent both from the start of this litigation in 2010 and from the date that two other states brought similar actions in 2011 and 2012. Accordingly, the defendants lacked an objectively reasonable basis for seeking removal and should therefore bear the costs for the plaintiff's successful motion to remand. *See Massad v. Greaves*, 554 F. Supp. 2d 163, 167 (D. Conn. 2008) (awarding costs and fees where removal was "untimely and without any legal basis"). The plaintiff shall, within thirty days of this order, submit affidavits or other documentation supporting the total amount of any out-of-pocket attorneys' fees or other actual expenses it has incurred, and this court will retain jurisdiction following remand for the limited purpose of resolving the motion for fees and/or costs under section 1447(c). *See Bryant v. Britt*, 420 F.3d 161, 165 (2d Cir. 2005) (holding that "a district court has jurisdiction to resolve a motion for fees and costs under § 1447(c) after a remand order has issued").

**IV.      Conclusion**

For the reasons articulated above, the plaintiff's motion to remand (doc. # 26) is

GRANTED, and the case is hereby REMANDED to Connecticut Superior Court for further

proceedings.  In addition, the defendants are hereby ordered to pay any actual expenses incurred

by the plaintiff in connection with this motion in an amount to be determined at a later date.  All

other pending motions (docs. # 17, # 24, # 37, and # 43) are denied as moot.

It is so ordered.

Dated at Bridgeport, Connecticut this 24th day of April 2013.


 /s/ Stefan R. Underhill
Stefan R. Underhill
United States District Judge